# EXHIBIT C

FIRE Foundation for Individual Rights and Expression

FAC FIRST AMENDMENT COALITION

July 23, 2026

**Sent *Via* USPS Priority Express Mail, Facsimile, and Email**
Los Angeles City Council
c/o Patrice Y. Lattimore, City Clerk
200 North Spring Street
Room 360, City Hall
Los Angeles, CA 90012
cityclerk@lacity.org
Fax: (213) 978-1027

*Re: Demand to Cease and Desist First Amendment and Brown Act Violations Relating to Los Angeles City Council Public-Comment Rules*

Dear Honorable Members of the Los Angeles City Council:

The Foundation for Individual Rights and Expression (FIRE) and the First Amendment Coalition (FAC) represent Stacey Segarra-Bohlinger, a Los Angeles resident who regularly attends and speaks during the public-comment portions of City Council and Committee meetings.

This letter concerns Council Rule 7, which unlawfully restricts public participation in City Council and Committee meetings by (1) prohibiting the words "cunt," "nigger," and their variations (the "Word Ban"); and (2) barring individuals removed from a meeting from attending future meetings (the "Exclusion Provisions"). Both rules facially violate the First Amendment and the Ralph M. Brown Act, Cal. Gov't Code §§ 54950 *et seq.*,[1] because they permit censoring speech absent actual disruption of a meeting.

Though the First Amendment and Brown Act each allow the government to adopt reasonable, viewpoint-neutral regulations governing public comment, *Reza v. Pearce*, 806 F.3d 497, 506 (9th Cir. 2015); § 54954.3(b)(1), each prohibits removing a speaker unless that person "*actually* disrupts, disturbs, impedes, or renders infeasible the orderly conduct of the meeting," § 54957.95(a), (b)(1) (emphasis added); *accord Reza*, 806 F.3d at 506 ("Our circuit's case law also

[1] All further references are to the California Government Code, unless otherwise noted.

unambiguously held that a government official could remove an individual from a limited public forum only if the individual had actually disrupted proceedings." (citation omitted)).

The Council therefore violated Ms. Segarra-Bohlinger's constitutional and statutory rights when it enforced the Word Ban against her on October 31 and December 3, 2025, for using the word "cunt" while criticizing the Word Ban, even though on both occasions she remained within her allotted time, her remarks addressed a matter squarely within the Council's jurisdiction, and she did not disrupt the meeting.

This letter serves as a formal demand under Government Code § 54960.2 for the Council to provide an "unconditional commitment" to "cease, desist from, and not repeat" removing or threatening to remove a speaker based on the language they use absent actual disruption of a meeting. If the Council does not provide the requested commitment and repeal the unconstitutional Word Ban and Exclusion Provisions, Ms. Segarra-Bohlinger intends to file suit.

## I. Factual Background.

On July 30, 2025, the City Council adopted the Word Ban prohibiting members of the public speaking during City Council and Committee meetings from using the words "cunt," "nigger," or "any variation of either of these words," regardless of the context in which they are used. *See* Council File No. 16-1104-S3. Under the Word Ban, a speaker who utters a prohibited word receives a warning that further use at any meeting will result in termination of the speaker's remarks and possible removal of the speaker from that meeting. *Id.* The Council adopted the Word Ban based on its beliefs that the prohibited words are not "necessary to convey [a speaker's] viewpoints," that a speaker who uses a prohibited word does so only "for the sake of offense and injury itself," and that the mere utterance of a prohibited word is too "offensive" and "inherently harmful" to tolerate at Council and Committee meetings. *Id.* paras. 2–4. According to the Council, the presiding officer's "need to stop the meeting to re-issue the order" to not use a banned word "actually disrupt[s] the meeting." *Id.*

Separately, on October 14, 2025, the Council amended its rules to increase the penalties for individuals removed from meetings. *See* Council File No. 16-1104-S2. Under the Exclusion Provisions prior to that amendment, a person removed from a City Council or Committee meeting was excluded from the remainder of that meeting, and potentially from future meetings for up to six business days depending on their recent removal history. *Id.* Now, under the October 2025 amendment, even a first offense results in being "excluded from attending all

Council and Committee meetings for the remainder of that day and for the following business day." *Id.*

At the October 31, 2025, regular City Council meeting, Ms. Segarra-Bohlinger criticized the Council and its Word Ban by remarking that the Council was "afraid of the word 'cunt.'" LACityClerk, *Regular City Council – 10/31/25*, at 2:04:41 (YouTube, Oct. 31, 2025), https://www.youtube.com/live/djwZFbCZlA0?t=7481s. She continued, "Kind of insane how you're more offended by bad words than police brutalizing citizens and journalists in the streets." *Id.* at 02:05:15. Ms. Segarra-Bohlinger's public comment remained on topic, did not exceed her allotted time, did not disrupt the meeting, and did not otherwise interfere with the Council's ability to conduct business.

Yet after Segarra-Bohlinger concluded her remarks, Councilmember Heather Hutt objected that the word "cunt"—even used within the context of criticizing the Council's Word Ban—offended her and insisted that Council President Pro Tempore Bob Blumenfield, who was presiding over the meeting, intervene. *Id.* at 02:05:28. Blumenfield acquiesced, informed Ms. Segarra-Bohlinger that she used a prohibited word, and warned that any future use of a banned word would subject her to ejection from the meeting. *Id.* at 02:05:32.

Then, on December 3, 2025, the Council enforced the Word Ban against Ms. Segarra-Bohlinger a second time after she again used the word "cunt" while criticizing the Council and its Word Ban. LACityClerk, *Regular City Council – 12/3/25*, at 01:13:14 (YouTube, Dec. 3, 2025), https://www.youtube.com/live/XePOD5fR98w?t=4394s. Like before, she remained within her allotted time, spoke on a matter within the Council's jurisdiction, and did not actually disrupt the meeting. Nevertheless, with just one second left, Council President Marqueece Harris-Dawson paused her time to issue the Word Ban's required warning. *Id.* at 01:14:14. When Ms. Segarra-Bohlinger used her last moment to simply say word "cunt," Harris-Dawson expelled her from the meeting and, pursuant to the Exclusion Provisions, banned her from attending any City Council or Committee meetings for the remainder of the day. *Id.* at 01:14:43.

## II. The Word Ban Facially Violates the First Amendment and Brown Act Because It Censors Protected Speech and Exceeds the Council's Authority.

The Word Ban is facially invalid for at least three independent reasons.

First, the Word Ban violates the First Amendment because it discriminates based on viewpoint. The Council justifies the Word Ban by asserting that the

prohibited words are inherently offensive and have no legitimate place in public discourse. *See* Council File No. 16-1104-S3, paras. 2–5. But the First Amendment does not permit the government to suppress speech because it is offensive, as "[g]iving offense is a viewpoint." *Matal v. Tam*, 582 U.S. 218, 243 (2017) (plurality opinion). A "core postulate of free speech law" is that the "government may not discriminate against speech based on the ideas or opinions it conveys," no matter how "offensive to a substantial percentage of the members of any group" the speech might be. *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019) (citations omitted). Under the First Amendment, "speech cannot be restricted simply because it is upsetting or arouses contempt," and "in public debate we must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment." *Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (cleaned up).

The First Amendment likewise bars the government from prohibiting particular words because it believes they are unnecessary to convey a speaker's message. As the Supreme Court explained more than a half century ago in striking down a conviction of a man who wore a "Fuck the Draft" jacket in a Los Angeles County courthouse, "one man's vulgarity is another's lyric," and "words are often chosen as much for their emotive as their cognitive force." *Cohen v. California*, 403 U.S. 15, 25–26 (1971). Accordingly, the "First Amendment mandates that we presume that speakers, not the government, know best both what they want to say and how to say it." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 790–91 (1988).

The Council's attempt to defend the Word Ban by branding the prohibited terms "fighting words" *per se* is likewise contrary to settled law. *See* Council File No. 16-1104-S3, paras. 3–4 (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942)). "[E]ven the most egregious racial slur is not a fighting word *per se*." *United States v. Bartow*, 997 F.3d 203, 209 (4th Cir. 2021); *see also United States v. Eichman*, 496 U.S. 310, 318–19 (1990) (explaining the government cannot punish flag desecration for being "deeply offensive to many," just as it cannot punish "virulent ethnic and religious epithets" on that basis (citing *Terminiello v. City of Chicago*, 337 U.S. 1 (1949))); *Jefferson v. Superior Ct.*, 51 Cal. App. 3d 721, 724 (1975) (holding that "mere use of a vulgar, profane, indecorous, scurrilous, opprobrious epithet cannot alone be grounds" to censor it as a fighting word).[2]

---

[2] In any event, the continued vitality of the "fighting words" doctrine is questionable at best. *See United States v. Poocha*, 259 F.3d 1077, 1081 (9th Cir. 2001) ("[T]he area of speech unprotected as fighting words is at its narrowest, *if indeed it exists at all*, with respect to criminal prosecution for speech directed at public officials." (emphasis added)); *see also*

Second, the Word Ban is unreasonable in light of the purpose of public-comment periods, which exist to "foster public discourse and robust debate about community issues relevant to the operations and objectives" of the government. *Miller v. Heimuller*, No. 3:23-cv-293-SI, 2025 WL 2374385, at *6 (D. Or. Aug. 15, 2025); *accord White v. City of Norwalk*, 900 F.2d 1421, 1425 n.3 (9th Cir. 1990). While the Council may adopt reasonable rules to maintain order, "it is not reasonable to prohibit speech [in a limited public forum] merely because it may offend some people's sense of decorum." *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 969 (9th Cir. 2002), *abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

The Council's justification that the banned words are inherently disruptive because they prompt disruptive objections from listeners is nothing more than an unconstitutional heckler's veto. "The prototypical heckler's veto case is one in which the government silences *particular* speech or a *particular* speaker due to an anticipated disorderly or violent reaction of the audience." *Meinecke v. City of Seattle*, 99 F.4th 514, 522 (9th Cir. 2024) (cleaned up). The appropriate response—and the constitutionally required one—is to restrain those who actually disrupt a meeting, not to censor the speaker. *See, e.g.*, *Boddy v. Grech*, 178 F.4th 264, 276–77 (6th Cir. 2026) (holding school board president "engaged in unconstitutional viewpoint discrimination" when she "threatened to cut Boddy's microphone and then did just that" instead of "us[ing] her authority to quiet the crowd" that "tried to shout [Boddy] down"); *see also Dowd v. City of Los Angeles*, No. CV 09-06731 DDP (SSx), 2013 WL 4039043, at *17 (C.D. Cal. Aug. 7, 2013) ("The disruption cannot be the reaction of a Councilmember who is attacked."). "First Amendment jurisprudence is clear that the way to oppose offensive speech is by more speech, not censorship, enforced silence or eviction from legitimately occupied public space." *Gathright v. City of Portland*, 439 F.3d 573, 578 (9th Cir. 2006).

Third, the Word Ban is unlawful because it authorizes removing a speaker absent actual disruption of a meeting, something the First Amendment and the Brown Act both prohibit. Under the First Amendment, "actual disruption [is] required to eject a person from a limited public forum." *Reza*, 806 F.3d at 506. The Ninth Circuit has repeatedly made clear that "[a]ctual disruption means actual disruption." *Norse v. City of Santa Cruz*, 629 F.3d 966, 976 (9th Cir. 2010) (en banc); *accord Acosta v. City of Costa Mesa*, 718 F.3d 800, 811 (9th Cir. 2013) (per curiam);

---

*Counterman v. Colorado*, 600 U.S. 66, 77 n.4 (2023) ("This Court has not upheld a conviction under the fighting-words doctrine in 80 years," making it "a poor candidate for spinning off other First Amendment rules."); *id.* at 103 n.4 (Sotomayor, J., concurring) ((arguing the doctrine "is an unlikely candidate for a broader theory of the First Amendment").

*Fitzgerald v. County of Orange*, 570 F. App'x 653, 657 (9th Cir. 2014); *Reza*, 806 F.3d at 506.

Critically, and contrary to the City's justification for enforcing the Word Ban against Ms. Segarra-Bohlinger, the Ninth Circuit squarely rejected the argument that a city council may "define[] any violation of its decorum rules to be a 'disturbance'" sufficient to justify removal." *Norse*, 629 F.3d at 976. That means, "[a]t a minimum, the disturbance must be something more than the bare violation of a rule." *Dowd*, 2013 WL 4039043, at *17 (citing *Acosta*, 718 F.3d at 810 n.5); *accord Norse*, 629 F.3d at 976 ("Actual disruption … does not mean … technical disruption ….").

The Brown Act likewise prohibits removing a speaker unless they "actually disrupt[] … the orderly conduct of the meeting" after receiving a warning. § 54957.95(a), (b)(1). Although the Brown Act states that disruption may include "failure to comply with reasonable and lawful regulations adopted by a legislative body," § 54957.95(b)(1)(A), a regulation that simply bans a word outright is neither reasonable nor lawful.

Yet the Word Ban authorizes removal whenever a speaker merely repeats a banned word after receiving a warning, regardless of whether the speaker actually disrupts the meeting. That is precisely what the First Amendment and Brown Act prohibit.

## III. The Exclusion Provisions Facially Violate the First Amendment and Brown Act Because They Bar Public Participation Based on Speculation of Disruption.

The Exclusion Provisions independently violate the First Amendment and Brown Act because they prospectively exclude individuals from future meetings based on alleged past disruption.

Though the First Amendment and Brown Act each allow the presiding officer of a government meeting "to maintain decorum … by ordering disruptive individual [*sic*] immediately to leave" the meeting, *Walsh v. Enge*, 154 F. Supp. 3d 1113, 1131 (D. Or. 2015); *accord* §§ 54957.9, 54957.95(a), "[m]aintaining decorum does not … require prolonged and prospective exclusions from a forum intended for public discourse and debate," *Walsh*, 154 F. Supp. 3d at 1131. Critically, an exclusion "based on a past incident, or even several past incidents, of disruption is not exclusion from a given meeting for actual disruption: it is an impermissible prospective exclusion for possible or assumed disruption in the future." *Id.* at 1133. In short, "no matter how many meetings of a city council a person disrupts, he or

she does not forfeit or lose the future ability to exercise constitutional rights and may not be prospectively barred from attending future meetings." *Id.* at 1118; *cf. Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 507 (6th Cir. 2001) ("[W]here a law sets out primarily to arrest the future speech of a defendant as a result of his past conduct, it operates like a censor, and as such violates First Amendment protections against prior restraint of speech.").

The Exclusion Provisions' prospective bar on attending Council and Committee meetings is therefore unlawful because it rests not on any finding that an individual is "actually disrupt[ing]" the meeting they seek to attend but on speculation that they *might* cause disruption based on past behavior. But "mere speculation that some persons may make others feel unsafe or engage in additional disruptions is an insufficient basis upon which to erect a governmental power to bar those who wish to express their views from participating in public debate." *Walsh*, 154 F. Supp. 3d at 1132.

The Exclusion Provisions also violate the Brown Act because they permit excluding individuals from meetings for reasons the Act prohibits. Under the Brown Act, "[a]ll meetings of the legislative body of a local agency shall be open and public, and *all persons* shall be permitted to attend *any meeting* of the legislative body of a local agency, *except as otherwise provided in this chapter*." § 54953(a) (emphasis added). The Brown Act precludes any local regulations inconsistent with the Act. *S.D. Union v. City Council*, 146 Cal. App. 3d 947, 957–58 (1983) (explaining the Legislature intended the Brown Act to "preempt the field to the exclusion of local regulation"); *see also, e.g.*, § 54960 (authorizing action for equitable relief "for the purpose of stopping or preventing violations or threatened violations … or to determine the applicability of [the Brown Act] to ongoing actions or threatened future actions or … past actions of [a] legislative body").

By the Brown Act's plain terms, a legislative body may exclude someone from a meeting only for reasons the Act expressly authorizes. Two narrow provisions allow excluding members of the public in particular circumstances: Section 54957.9 allows a legislative body to order a meeting room cleared except for press and to resume the meeting in certain circumstances, and Section 54957.95 allows a legislative body to remove an individual from a meeting in certain circumstances.[3] Critically for present purposes, these provisions allow clearing or removal only from the meeting at hand—that is, in the case of a speaker's removal for actually disrupting a meeting, only from that disrupted meeting. Neither provision allows a

[3] Under Section 54957.96(a), a legislative body's authority to remove remote participants is coextensive with its authority to remove in-person attendees. That provision does not create independent authority to remove individuals.

legislative body to ban persons from attending future meetings due to their conduct at past meetings.

At least one court has already cast doubt on the validity of a prior version of the Council's Exclusion Provisions. *See Spindler v. State Bar of Cal.*, No. CV 18-8712-JLS(E), 2019 WL 8810148, at *8 (C.D. Cal. Aug. 16, 2019) (questioning whether "a municipality may ban an individual from attending future public meetings based on the individual's prior disruptive conduct" but declining to reach the issue). As *Walsh* explained, for legislative bodies seeking to maintain order, there is a "simple alternative" to excluding speakers from future meetings: "They can order any disruptive individual to leave the meeting that he or she is disrupting for the duration of that meeting." 154 F. Supp. 3d at 1132.

The Exclusion Provisions compound the infirmities of the Word Ban. The Word Ban authorizes the Council to remove a speaker who merely repeats a prohibited word after receiving a warning, and the Exclusion Provisions then bar that speaker from attending future Council and Committee meetings and from addressing the Council during public comment—no actual disruption required. As a result, protected, nondisruptive speech becomes the basis not only for removal, but also for prospective exclusion from opportunities to petition the Council. Neither the First Amendment nor the Brown Act permits that result.

## IV. The Council Violated Ms. Segarra-Bohlinger's Rights By Enforcing the Word Ban Against Her.

The Council twice violated both the First Amendment and the Brown Act by enforcing the Word Ban against Ms. Segarra-Bohlinger.

At both the October 31 and December 3, 2025, Council meetings, Ms. Segarra-Bohlinger used the word "cunt" while criticizing the Council's Word Ban. Such criticism about a matter plainly within the Council's jurisdiction "is at the very center of the constitutionally protected area of free discussion." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). After all, "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964).

At both the October 31 and December 3 Council meetings, Ms. Segarra-Bohlinger remained within her allotted time, complied with the Council's procedures, and did not interfere with the Council's ability to conduct business. Still, on both occasions, the Council warned her that any further use of a banned word would result in her removal; and on December 3 did remove her. The Council punished Ms. Segarra-Bohlinger not because she actually disrupted a meeting, but

because she said a banned word while criticizing the Council. Such enforcement violated the First Amendment and the Brown Act. *See Norse*, 629 F.3d at 976; § 54957.95(a).

Ms. Segarra-Bohlinger wishes to continue criticizing the Council and its policies, including the Word Ban, using language protected by the First Amendment, without risking removal or exclusion from future meetings. But unless the Council repeals the Word Ban and Exclusion Provisions and provides an unconditional commitment under Government Code § 54960.2, she remains subject to the same unlawful threat whenever she addresses the Council.

## V. Demand.

The Word Ban and Exclusion Provisions facially violate the First Amendment and exceed the authority the Brown Act grants to local legislative bodies. The Council's enforcement of the Word Ban against Ms. Segarra-Bohlinger thus violated the First Amendment and the Brown Act.

Accordingly, Ms. Segarra-Bohlinger demands that the Council:

(1) Pursuant to Government Code § 54960.2, provide an unconditional commitment that it will cease, desist from, and not repeat violating the Brown Act by removing or threatening to remove speakers based on the language they use absent actual disruption of the meeting;

(2) Permanently repeal the Word Ban; and

(3) Permanently repeal the Exclusion Provisions.

Please provide the Council's unconditional commitment under Government Code § 54960.2, together with its response to these demands, no later than 30 days after service of this letter. *See* § 54960.2(b). If the Council does not provide the requested commitment or refuses to repeal the Word Ban and Exclusion Provisions, Ms. Segarra-Bohlinger is prepared to file suit seeking all available relief, including declaratory and injunctive relief under the First Amendment and Brown Act, damages under 42 U.S.C. § 1983, and attorneys' fees and costs under 42 U.S.C. § 1988 and the Brown Act.

We hope the Council will take this opportunity to bring its meeting rules into compliance with the First Amendment and Brown Act without the need for litigation. Please do not hesitate to contact me with any questions.

Sincerely,

_s/David Loy_
David Loy
Legal Director
FIRST AMENDMENT COALITION
534 4th Street, Suite B
San Rafael, CA 94901
Tel: (415) 460-5060
dloy@firstamendmentcoalition.org

_s/Zachary Silver_
Zachary Silver*
Staff Attorney
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
Tel: (215) 717-3473
zach.silver@fire.org

** Admitted in New York and the District of Columbia*

cc: Marqueece Harris-Dawson, President of the Los Angeles City Council, councilmember.harris-dawson@lacity.org
Hydee Feldstein Soto, Los Angeles City Attorney, cityatty.help@lacity.org