David Loy, Cal. Bar No. 229235
FIRST AMENDMENT COALITION
534 4th Street, Suite B
San Rafael, CA 94901
Telephone: (415) 460-5060
Email: dloy@firstamendmentcoalition.org

Zachary T. Silver, D.C. Bar No. 1742271*
Gabriel Z. Walters, D.C. Bar No. 1019272*
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, D.C. 20003
Telephone: (215) 717-3473
Email: zach.silver@fire.org
Email: gabe.walters@fire.org

*Attorneys for Plaintiff*
* Admitted *pro hac vice*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

STACEY SEGARRA-BOHLINGER,

Plaintiff,

v.

CITY OF LOS ANGELES, a political subdivision of the State of California,

Defendant.

Civil Case No. 2:26-cv-11599

**PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Date: TBD
Time: TBD
Before: TBD

**TO THE COURT, THE PARTIES, AND ALL ATTORNEYS OF RECORD:**

Pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rule 6-1, PLAINTIFF STACEY SEGARRA-BOHLINGER moves for a preliminary injunction. Plaintiff requests this motion be heard at the nearest available date at which the motion may properly be considered.

Segarra-Bohlinger seeks a preliminary injunction prohibiting Defendant City of Los Angeles (the "City"), including the Los Angeles City Council (the "Council") and its committees, from enforcing the provisions of Council Rules 7 and 63 that categorically prohibit speakers from saying any "variation" of two words—"cunt" and "nigger"—at Council and committee meetings, regardless of context (the "Word Ban"). Upon a speaker's first use of either prohibited word at a Council or committee meeting, the presiding officer must warn the speaker not to use the word again. If the speaker thereafter uses the word "in that or any future Council or Committee meeting," the presiding officer must terminate the speaker's remarks and may remove them from the meeting.

Segarra-Bohlinger also seeks a preliminary injunction prohibiting the City, including the Council and its committees, from enforcing the provisions of Council Rules 7 and 63 that automatically exclude a person removed from a Council or committee meeting from all future Council and committee meetings for a prescribed period (the "Meeting Ban"). Together, the challenged rules allow constitutionally protected speech to serve as the basis for removal and prolonged, prospective exclusion from government meetings open to public attendance and participation.

There is good cause to grant this motion. As explained below, both challenged rules facially violate the First Amendment and the Ralph M. Brown Act, Cal. Gov't Code §§ 54950–54963; Segarra-Bohlinger will continue to suffer irreparable harm absent a preliminary injunction; and the balance of equities

and public interest favor an injunction protecting First Amendment and Brown Act rights. Segarra-Bohlinger thus respectfully requests that the Court preliminarily enjoin the City from enforcing the Word Ban and Meeting Ban during the pendency of this action and waive the security requirement of Federal Rule of Civil Procedure 65(c).

DATED: October 30, 2026

Respectfully submitted,

By: /s/ Zachary Silver

Zachary Silver
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
Attorney for Plaintiff

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i
TABLE OF AUTHORITIES ..... iii
INTRODUCTION ..... 1
FACTUAL BACKGROUND ..... 3
ARGUMENT ..... 7
I. Segarra-Bohlinger Is Likely to Succeed on the Merits of Her Claims Because the Word Ban Violates Well-Settled First Amendment Limits on Regulating Public Meetings. ..... 8
A. The Word Ban discriminates based on viewpoint by selectively prohibiting "offensive" words. ..... 8
B. The Word Ban fails strict scrutiny. ..... 12
C. The Word Ban unreasonably suppresses speech in a limited public forum. ..... 14
D. The Word Ban is an unconstitutional prior restraint. ..... 16
II. Segarra-Bohlinger Is Likely to Succeed on Her Claim that the Word Ban Is Unconstitutionally Overbroad. ..... 17
III. Segarra-Bohlinger Is Likely to Succeed on Her Claim that the Meeting Ban Unreasonably Excludes Citizens from a Limited Public Forum. ..... 19
IV. Segarra-Bohlinger Is Likely to Succeed in Showing the Meeting Ban Imposes an Unconstitutional Prior Restraint on Attending and Participating in Public Meetings. ..... 20
V. Segarra-Bohlinger Is Likely to Succeed on Her Claim that the Word Ban and Meeting Ban Violate the Brown Act. ..... 21
VI. The Word Ban and Meeting Ban Irreparably Harm Segarra-Bohlinger's Speech Rights. ..... 22

VII. The Balance of Equities and Public Interest Favor Upholding Speech Rights. ........ 23
CONCLUSION ........ 24

# TABLE OF AUTHORITIES

## Cases

*Am. Freedom Def. Initiative v. King County*,
904 F.3d 1126 (9th Cir. 2018) .......... 9

*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023) .......... 23

*Boddy v. Grech*,
178 F.4th 264 (6th Cir. 2026) .......... 11

*Brandenburg v. Ohio*,
395 U.S. 444 (1969) .......... 19

*Brown v. City of Jacksonville*,
No. 3:06-CV-122-J-20MMH, 2006 WL 385085 (M.D. Fla. Feb. 17, 2006) .......... 20, 21

*Chaker v. Crogan*,
428 F.3d 1215 (9th Cir. 2005) .......... 18

*Chaplinsky v. New Hampshire*,
315 U.S. 568 (1942) .......... 10

*Chiles v. Salazar*,
607 U.S. 627 (2026) .......... 9, 10, 12, 19

*City of Lakewood v. Plain Dealer Publ'g Co.*,
486 U.S. 750 (1988) .......... 17

*Cohen v. California*,
403 U.S. 15 (1971) .......... 2, 10, 12, 18

*Counterman v. Colorado*,
600 U.S. 66 (2023) .......... 10

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .......... 4, 5

*Dowd v. City of Los Angeles*,
No. CV 09-06731 DDP (SSx), 2013 WL 4039043 (C.D. Cal. Aug. 7, 2013) .......... 11, 12, 15

*Elrod v. Burns*,
427 U.S. 347 (1976) .......... 7, 22

*FCC v. Pacifica Found.*,
438 U.S. 726 (1978) .......... 8

*Fellers v. Kelley*,
189 F.4th 177 (1st Cir. 2026) .......... 15

*Forsyth County v. Nationalist Movement*,
505 U.S. 123 (1992) .......... 15

*Freedman v. Maryland*,
380 U.S. 51 (1965) .......... 21

*Garcia v. County of Alameda*,
150 F.4th 1224 (9th Cir. 2025) .......... 23

*Gathright v. City of Portland*,
439 F.3d 573 (9th Cir. 2006) .......... 11

*Honeyfund.com Inc. v. Governor*,
94 F.4th 1272 (11th Cir. 2024) .......... 11

*Iancu v. Brunetti*,
588 U.S. 388 (2019) .......... 1, 9, 11

*In re Nat'l Sec. Letter*,
33 F.4th 1058 (9th Cir. 2022) .......... 17, 21

*Jefferson v. Superior Ct.*,
51 Cal. App. 3d 721 (1975) .......... 10, 19

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) .......... 23

*Kaahumanu v. Hawaii*,
682 F.3d 789 (9th Cir. 2012) .......... 15

*Matal v. Tam*,
582 U.S. 218 (2017) .......... 3, 9, 10

*Meinecke v. City of Seattle*,
99 F.4th 514 (9th Cir. 2024) .......... 8, 10, 23

*Members of City Council v. Taxpayers for Vincent*,
466 U.S. 789 (1984) .......... 11

*Minn. Voters All. v. Mansky*,
585 U.S. 1 (2018) .......... 15

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) .......... 17, 18, 19

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) .......... 1

*N.Y. Times Co. v. United States*,
403 U.S. 713 (1971) .......... 17

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 23

*Norse v. City of Santa Cruz*,
629 F.3d 966 (9th Cir. 2010) (en banc) .......... 2, 14, 15, 19, 21

*Or. Right to Life v. Stolfi*,
158 F.4th 1013 (9th Cir. 2025) .......... 5

*Org. for a Better Aus. v. Keefe*,
402 U.S. 415 (1971) .......... 16, 20, 21

*Prince v. Jacoby*,
303 F.3d 1074 (9th Cir. 2002) .......... 13

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992) .......... 13, 18

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
487 U.S. 781 (1988) .......... 10
*Roman Cath. Diocese of Brooklyn v. Cuomo*,
592 U.S. 14 (2020) .......... 7, 22
*Rosenbaum v. City & County of San Francisco*,
8 F. App'x 687 (9th Cir. 2001) .......... 11
*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995) .......... 8, 9, 12
*Rosenblatt v. Baer*,
383 U.S. 75 (1966) .......... 8, 23
*Sammartano v. First Jud. Dist. Ct.*,
303 F.3d 959 (9th Cir. 2002) .......... 12, 16, 18
*S.D. Union v. City Council*,
146 Cal. App. 3d 947 (1983) .......... 22
*Se. Promotions, Ltd. v. Conrad*,
420 U.S. 546 (1975) .......... 16, 21
*Shuttlesworth v. City of Birmingham*,
394 U.S. 147 (1969) .......... 17
*United States v. Bartow*,
997 F.3d 203 (4th Cir. 2021) .......... 10, 19
*United States v. Poocha*,
259 F.3d 1077 (9th Cir. 2001) .......... 10
*United States v. Stevens*,
559 U.S. 460 (2010) .......... 21
*Utah Pol. Watch, Inc. v. Musselman*,
179 F.4th 1241 (10th Cir. 2026) .......... 9, 10
*Victory Processing, LLC v. Fox*,
937 F.3d 1218 (9th Cir. 2019) .......... 12, 13

*Waln v. Dysart Sch. Dist.*,
54 F.4th 1152 (9th Cir. 2022) .......... 9
*Walsh v. Enge*,
154 F. Supp. 3d 1113 (D. Or. 2015) .......... 2, 8, 14, 19, 20
*Wash. State Grange v. Wash. State Republican Party*,
552 U.S. 442 (2008) .......... 17
*White v. City of Norwalk*,
900 F.2d 1421 (9th Cir. 1990) .......... 8, 14, 15, 23
*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 7, 12

**<u>Constitutional Provisions and Statutes</u>**

Cal. Gov't Code § 54951 .......... 21
Cal. Gov't Code § 54952(a) .......... 21
Cal. Gov't Code § 54953(a) .......... 2, 3, 21, 22
Cal. Gov't Code § 54954.3 .......... 2, 3, 22
Cal. Gov't Code § 54957.95 .......... 2, 3, 13, 18, 20, 22
L.A., Cal., Charter § 242 .......... 3

**<u>Other Authorities</u>**

David Mack,
*The C-Word Is Everywhere Right Now—And Not in a Bad Way*,
Rolling Stone (May 15, 2023) .......... 22
Elizabeth Chou,
*Interview: Marqueece Harris-Dawson's Vision for LA City Hall*,
L.A. Pub. Press (Sept. 25, 2024, 11:35 AM) .......... 5

Jon Regardie,
*Exclusive: Council President Set to Target Vile Slurs in City Hall*, Westside Current (Mar. 20, 2025) .......... 5

L.A. Dep't of City Planning,
*Los Angeles Historic Context Statement: African American History of Los Angeles* (2018) .......... 22

LACityClerk,
*Regular City Council – 3/4/25* (YouTube, Mar. 4, 2025) .......... 5, 16

LACityClerk,
*Regular City Council – 10/31/25* (YouTube, Oct. 31, 2025) .......... 6, 18

LACityClerk,
*Regular City Council – 12/3/25* (YouTube, Dec. 3, 2025) .......... 7, 18

LACityClerk,
*Regular City Council – 8/4/26* (YouTube, Aug. 4, 2026) .......... 7, 27

LACityClerk,
*Regular City Council – 8/5/26* (YouTube, Aug. 5, 2026) .......... 16

LACityClerk,
*Regular City Council – 8/6/25* (YouTube, Aug. 6, 2025) .......... 22

LACityView35,
*Council President Marqueece Harris-Dawson Swearing In Ceremony Press Conference 9/20/24* (YouTube, Sept. 20, 2024) .......... 4

**Rules**

Fed. R. Civ. P. 65(c) .......... 28

L.A., Cal., City Council Rule 11 .......... 4

L.A., Cal., City Council Rule 12 .......... 4, 15, 21, 24

L.A., Cal., City Council Rule 62 .......... 3

L.A., Cal., City Council Rule 63 .......... 1, 3, 4

L.A., Cal., City Council Rule 7 ........................................ 1, 3, 4

# INTRODUCTION

The Constitution bars the government from dictating which words people use in criticizing their elected officials. Our First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Its protection extends to "vehement, caustic, and … unpleasantly sharp attacks on government and public officials," *id.*, no matter how offensive some may find them, *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019).

Yet the Los Angeles City Council makes itself the arbiter of which words citizens may use when addressing their government. Its meeting rules categorically prohibit speakers from saying any variation of two words—"cunt" and "nigger"—regardless of context (the "Word Ban"). The Council considers these words "offensive" and believes speakers use them only "for the sake of offense and injury itself." Ex. B, at 1 (codified at Ex. A, at 3, 19 (Council Rules 7, 63)).[1] Using a banned word triggers a warning; repeating it terminates the speaker's remarks and subjects them to possible ejection from the meeting. Removal, in turn, automatically triggers a separate rule barring the speaker from future Council and committee meetings (the "Meeting Ban"). Ex. C (codified at Ex. A, at 3, 19 (Council Rules 7, 63)).

The Council has turned both the Word Ban and the Meeting Ban against its critics, like Plaintiff Stacey Segarra-Bohlinger. At two Council meetings, she criticized the Council and its censorship by singing parody songs using the word "cunt." Both times, she remained on topic, within her allotted time, and stayed nondisruptive. Yet the Council warned her against using the word and, when she repeated it at the second meeting, removed her, automatically

[1] All citations to exhibits refer to those attached to Segarra-Bohlinger's preliminary injunction motion.

barring her from six public meetings the Council and its committees held the ensuing two days. And because that warning remains in effect at future meetings, Segarra-Bohlinger must continue choosing between self-censorship or being silenced, removed, and excluded from meetings. Those consequences flowed, and continue to flow, entirely from her word choice rather than any disruptive conduct.

That matters because the First Amendment requires a speaker "actually to disturb a meeting" before suffering silencing and removal. *Norse v. City of Santa Cruz*, 629 F.3d 966, 976 (9th Cir. 2010) (en banc). Yet the Council manufactures its own "disruption" by treating its own interruptions to enforce the Word Ban as "actual[] disrupt[ion]." Ex. A, at 3. The Meeting Ban likewise impermissibly excludes based on "possible or assumed disruption in the future," not actual disruption of the (future) meetings it bars speakers from attending. *Walsh v. Enge*, 154 F. Supp. 3d 1113, 1133 (D. Or. 2015).

Both Bans also violate California's Ralph M. Brown Act, which safeguards public attendance and comment, including criticism, at Council meetings and generally permits removal only for actual disruption. Cal. Gov't Code §§ 54953(a), 54954.3(a)(1), (c), 54957.95(a), (b)(1). The Word Ban restricts how citizens may criticize their government and permits removal without that disruption, while the Meeting Ban excludes people from meetings the Act guarantees they may attend.

At bottom, the Council makes for every speaker the judgment the First Amendment and Brown Act reserve to the individual: which particular words are necessary to express an idea. Fifty-five years ago, the Supreme Court invalidated a conviction for wearing a "Fuck the Draft" jacket in a Los Angeles courthouse because censoring particular words risks suppressing ideas those words help convey. *Cohen v. California*, 403 U.S. 15, 25–26 (1971). As the Court explained, "one man's vulgarity is another's lyric," *id.*, which is why it has "time

and again" rejected government suppression of speech that uses words deemed offensive, *Matal v. Tam*, 582 U.S. 218, 244 (2017) (plurality opinion) (collecting cases).

The Council, as always, may address actual disruption when it occurs. But it cannot transform offense into disruption by interrupting a speaker for words it finds offensive and then treat that self-created interruption as "disruption" justifying silencing, removing, and prospectively excluding the speaker. Absent preliminary relief, Segarra-Bohlinger must continue to self-censor at Council and committee meetings by avoiding the banned words even when she considers them most apt to express her views. The First Amendment and Brown Act make Segarra-Bohlinger's expression her decision—not the Council's.

## FACTUAL BACKGROUND

Los Angeles City Council and committee meetings are open to public attendance and allow public comment on matters within the relevant body's jurisdiction. Ex. A, at 2, 18–19 (Council Rules 7, 62–63); *see* Cal. Gov't Code §§ 54953(a), 54954.3(a)(1); L.A., Cal., Charter § 242. Speakers must remain on topic and yield when their time expires. Ex. A, at 4 (Council Rule 11). The presiding officer may remove someone who, after a warning, continues disrupting the meeting, subject to override by majority vote. *Id.* at 4–6 (Council Rule 12); Cal. Gov't Code § 54957.95.

In July 2025, the Council adopted a rule categorically prohibiting speakers from using any "variation" of "cunt" or "nigger," regardless of context, meaning, or effect on the meeting (the "Word Ban"). Ex. A, at 3 (Council Rule 7).[2] A first violation triggers a warning. *Id.* For any subsequent violation,

[2] Council Rule 63 makes Rule 7 applicable to committee meetings. Ex. A, at 19. Accordingly, unless otherwise noted, references to the challenged rules'

the presiding officer must stop the meeting, reissue the order to not use the word, declare the "need to stop the meeting to re-issue the order has actually disrupted the meeting," and terminate the speaker's remarks. *Id.* The speaker is "additionally subject to possible removal and exclusion." *Id.*

The Council adopted the Word Ban because it considers the prohibited words "offensive" and believes speakers use them "not because these epithets are necessary to convey their viewpoints but for the sake of offense and injury itself." Ex. B, at 1.[3] The Council cited listeners' offense at hearing the words and the purported "false impression" that residents believe the City "condones [their] use." *Id.* Before the Ban, however, a deputy city attorney regularly

---

applications at Council meetings also include applications at committee meetings.

[3] *See also* LACityView35, *Council President Marqueeece Harris-Dawson Swearing In Ceremony Press Conference 9/20/24*, at 31:16–32:16 (YouTube, Sept. 20, 2024), https://www.youtube.com/watch?v=xLM2Ku8fd_E (newly sworn-in Council President Harris-Dawson telling reporters he would prioritize eliminating "racist," "misogynistic," and "anti-Semitic" speech at meetings); Ex. E, Elizabeth Chou, *Interview: Marqueece Harris-Dawson's Vision for LA City Hall*, L.A. Pub. Press (Sept. 25, 2024, 11:35 AM), https://lapublicpress.org/2024/09/marqueece-harris-dawson-interview-council-president (Harris-Dawson pledging to "remove a lot of the riff-raff" whose public comments he called "vile, racist, homophobic, sexist, [and] antisemitic"); Ex. F, Jon Regardie, *Exclusive: Council President Set to Target Vile Slurs in City Hall*, Westside Current (Mar. 20, 2025), https://www.westsidecurrent.com/news/exclusive-council-president-set-to-target-vile-slurs-in-city-hall/article_37fadc73-8811-4959-87e1-0baedcc2c310.html (Harris-Dawson describing proposed Word Ban as "baby steps" toward the Council taking "additional steps in the future").

The Court may consider these statements as evidence. Harris-Dawson's recorded remarks are judicially noticeable because they appear in the City's publicly available recording of his press conference. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010) (judicially noticing information "made publicly available by government entities").

announced that Councilmembers did not condone those words but that the First Amendment required the Council to permit their use.[4]

The Council also changed its rules to "increase the consequences" for anyone "who disrupts and is ordered removed" from a meeting. Ex. C. Under the new rule, anyone removed from a Council or committee meeting is automatically barred from all Council and committee meetings through the following meeting day, with longer exclusions for subsequent removals within specified periods (the "Meeting Ban"). Ex. A, at 3.

During the October 31, 2025, public-comment period, Segarra-Bohlinger protested the Word Ban by singing a parody of the *Ghostbusters* theme criticizing the Council for being "afraid of the word 'cunt,'" then chastising it for being "more offended by bad words than police brutalizing citizens and journalists." Verified Compl. ("Compl.") ¶¶ 69–72.[5] Though she remained nondisruptive, a councilmember complained Segarra-Bohlinger's remarks "offended" her and insisted on enforcing the Word Ban. The presiding officer then warned Segarra-Bohlinger "not to use that word again" or be "subject to removal." *Id.* ¶¶ 73–78.[6]

---

[4] *E.g.*, LACityClerk, *Regular City Council – 3/4/25*, at 01:16:10–54 (YouTube, Mar. 4, 2025), https://www.youtube.com/watch?v=pkU_BmoZ_90. The Court may judicially notice the City's official recordings of Council meetings. *See Daniels-Hall*, 629 F.3d at 999. The recordings of the October 31 and December 3, 2025, Council meetings (cited *infra* notes 6 and 7, respectively) are also incorporated by reference into the Complaint, which expressly relies on them in alleging the events at those meetings. *See id.* at 998–99.

[5] A verified complaint is "the evidentiary equivalent of an affidavit." *Or. Right to Life v. Stolfi*, 158 F.4th 1013, 1020 (9th Cir. 2025).

[6] *See* LACityClerk, *Regular City Council – 10/31/25*, at 02:04:24–06:04 (YouTube, Oct. 31, 2025), https://www.youtube.com/watch?v=djwZFbCZlA0 [hereinafter October Meeting Video], for video of Segarra-Bohlinger's remarks and the Council enforcing the Word Ban against her.

During the December 3 public-comment period, Segarra-Bohlinger again protested the Word Ban, this time singing a parody of Adele's "Someone Like You" criticizing a councilmember's disregard for community input, the Council's priorities, and its Word Ban. *Id.* ¶¶ 81–83. She sang that she was "upset by [the Council's] censorship" but was "not calling anyone a cunt" and "would never" do so. *Id.* ¶ 82. Council President Harris-Dawson paused Segarra-Bohlinger's time and issued a warning under the Word Ban. When her time resumed, Segarra-Bohlinger said "cunt" once more, then promptly left the podium when her time expired. *Id.* ¶¶ 84–85. Though she violated no Council Rule other than the Word Ban and remained nondisruptive, Harris-Dawson ordered her to leave. *Id.* ¶¶ 86–89. The Meeting Ban then automatically barred her from all Council and committee meetings scheduled over the rest of that day and the next meeting day. *Id.* ¶¶ 89–91; Ex. A, at 3.[7]

Both Bans remain in effect, Ex. A, at 3, and the Council continues to enforce them.[8] In July 2026, Segarra-Bohlinger sent the Council a cease-and-desist letter explaining how the Bans violate the First Amendment and Brown Act and demanding the Council repeal the Bans and stop threatening, silencing, removing, and prospectively excluding people from meetings absent actual disruption. Compl. ¶ 92; Ex. D. The Council never responded. Compl. ¶ 94.

The warnings Segarra-Bohlinger received remain in effect at all future meetings, so if she again says "cunt," the presiding officer must cut off her

---

[7] *See* LACityClerk, *Regular City Council – 12/3/25*, at 01:13:14–14:47 (YouTube, Dec. 3, 2025), https://www.youtube.com/watch?v=XePOD5fR98w [hereinafter December Meeting Video], for video of Segarra-Bohlinger's remarks and the Council enforcing the Word Ban against her.

[8] *See, e.g.*, LACityClerk, *Regular City Council – 8/4/26*, at 01:09:54–13:49, 01:15:36–16:17 (YouTube, Aug. 4, 2026), https://www.youtube.com/watch?v=UkdZRHDB9qs (enforcing Word Ban against speaker protesting it by using prohibited word).

remaining speaking time, and may remove her from the meeting, without issuing another warning. Ex. A, at 3. And if she is removed, the Meeting Ban will automatically bar her from all Council and committee meetings over multiple days. *Id.* But Segarra-Bohlinger intends to continue attending and speaking at Council meetings about City officials and policies, including by using the words the Word Ban proscribes when she considers them necessary to her message. Compl. ¶ 104. The Bans thus force her to choose between self-censorship and the Bans' escalating consequences. *Id.* ¶ 107.

## ARGUMENT

Segarra-Bohlinger is entitled to a preliminary injunction because she is likely to succeed on the merits, she will suffer irreparable harm without relief, and the balance of equities and public interest favor an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Word Ban is unconstitutional *per se* as viewpoint discriminatory or, alternatively, cannot survive strict scrutiny. It also unreasonably restricts speech in a limited public forum, imposes an unlawful prior restraint, and is unconstitutionally overbroad. *Infra* Sections I–II. The Meeting Ban, meanwhile, unreasonably excludes people from future meetings absent actual disruption of those meetings and thus also imposes an unconstitutional prior restraint. *Infra* Sections III–IV. Because of these infirmities, both Bans also violate the Brown Act's protections for public attendance and participation. *Infra* Section V.

Segarra-Bohlinger continues to suffer irreparable harm, as it is well settled that "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); *see infra* Section VI. And the balance of equities and public interest favor relief because preventing First Amendment violations outweighs any City interest in enforcing unlawful rules.

*Infra* Section VII; *see Meinecke v. City of Seattle*, 99 F.4th 514, 526 (9th Cir. 2024). Accordingly, the Court should preliminarily enjoin enforcement of the Word and Meeting Bans.

## I. Segarra-Bohlinger Is Likely to Succeed on the Merits of Her Claims Because the Word Ban Violates Well-Settled First Amendment Limits on Regulating Public Meetings.

The Word Ban strikes at citizens' "enormous first amendment interest" in "directing speech about public issues to those who govern their city," *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990), by dictating which words citizens may use, prohibiting particular words regardless of context or effect on the meeting, and subjecting speakers who use those words to censorship, removal, and exclusion from future meetings. Especially given that speech criticizing the government lies "at the very center of the constitutionally protected area of free discussion," *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966), and the "'very purpose' of a council meeting 'is the creation of a forum for public discourse and decisionmaking,'" *Walsh*, 154 F. Supp. 3d at 1131 (quoting *White*, 900 F.2d at 1425 n.3), the Word Ban cannot withstand constitutional review.

### A. The Word Ban discriminates based on viewpoint by selectively prohibiting "offensive" words.

The Word Ban violates the "central tenet of the First Amendment that the government must remain neutral in the marketplace of ideas." *FCC v. Pacifica Found.*, 438 U.S. 726, 745–46 (1978) (plurality opinion). The government commits a "blatant" First Amendment violation where, as here, it targets "particular views taken by speakers on a subject." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). And it discriminates based on viewpoint when "the specific motivating ideology or the opinion or perspective of the speaker is the rationale for [a] restriction." *Id.* Importantly, a speaker's viewpoint encompasses not only their "particular thoughts and

ideas on a given topic," but also their decision about "'how best to speak' and express those ideas." *Utah Pol. Watch, Inc. v. Musselman*, 179 F.4th 1241, 1263 (10th Cir. 2026) (Tymkovich, J., concurring) (quoting *Chiles v. Salazar*, 607 U.S. 627, 640 (2026)). All "viewpoint discrimination is impermissible no matter the forum." *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1162 (9th Cir. 2022) (cleaned up).

The Word Ban discriminates based on viewpoint because it singles out words based on the offense the Council attributes to their use—in fact, it *admits* it prohibits the words "cunt" and "nigger" because it considers them "offensive." Ex. B, at 1. In enacting the Ban, the Council concluded speakers never need those words "to convey their viewpoints," so anyone who nevertheless uses them must do so only "for the sake of offense and injury itself." Ex. B, at 1.

But the Supreme Court has made clear that "giving offense is a viewpoint," *Matal*, 582 U.S. at 243 (plurality opinion), and disfavoring speech because it offends is "the essence of viewpoint discrimination," *see id.* at 249 (Kennedy, J., concurring). Thus, a restriction turning on whether expression comports with government notions of "decency or propriety" discriminates based on viewpoint. *Iancu*, 588 U.S. at 394 (prohibition on registering "immoral" or "scandalous" trademarks facially violated First Amendment as viewpoint discriminatory); *see also Am. Freedom Def. Initiative v. King County*, 904 F.3d 1126, 1131 (9th Cir. 2018) (rule allowing favorable or neutral speech about individuals or groups but prohibiting "demeaning or disparaging" speech "discriminates, on its face, on the basis of viewpoint"); *see also Rosenberger*, 515 U.S. at 829 (First Amendment prohibits targeting "specific motivating ideology … of the speaker"). Yet the Council censors expressive choices both because it considers those choices offensive, and because it disapproves of the speaker's assumed intent.

That censorship also rests on the inherently flawed premise that speakers do not need particular words to convey their viewpoints. Because "words are often chosen as much for their emotive as their cognitive force," the government "cannot indulge the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process." *Cohen*, 403 U.S. at 26. Speakers, "not the government, know best both what they want to say and how to say it." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 790–91 (1988); *accord Utah Pol. Watch*, 179 F.4th at 1263 (Tymkovich, J., concurring) (citing *Chiles*, 607 U.S. at 640).

The Council's reliance on the moribund "fighting words" doctrine fails. *See* Ex. B, at 1 (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942)). The Supreme Court has not reaffirmed that doctrine since *Chaplinsky*—more than 80 years ago. *See Counterman v. Colorado*, 600 U.S. 66, 77 n.4 (2023); *see also United States v. Poocha*, 259 F.3d 1077, 1081 (9th Cir. 2001) (questioning whether fighting words doctrine "exists at all" for speech directed at public officials). And "even the most egregious racial slur is not a fighting word *per se*." *United States v. Bartow*, 997 F.3d 203, 209 (4th Cir. 2021) (holding repeatedly using "nigger" during heated, face-to-face confrontation not fighting words absent likelihood of imminent violence); *see also Jefferson v. Superior Ct.*, 51 Cal. App. 3d 721, 724 (1975) ("mere use of a vulgar, profane, indecorous, scurrilous, opprobrious epithet cannot alone be grounds" for censorship as fighting words).

Nor may the Council justify its viewpoint discrimination by invoking listeners' reactions to the prohibited words. *See* Ex. B, at 1. Suppressing speech because of an "anticipated disorderly or violent reaction of the audience" is the "prototypical heckler's veto," *Meinecke*, 99 F.4th at 522 (citation omitted), and silencing a speaker based on listeners' objections to their viewpoint is itself viewpoint discriminatory, *see Matal*, 582 U.S. at 250 (Kennedy, J., concurring)

(government cannot "insulate a law from charges of viewpoint discrimination by tying censorship to the [audience's] reaction").[9] Indeed, "First Amendment jurisprudence is clear that the way to oppose offensive speech is by more speech, not censorship, enforced silence or eviction from legitimately occupied public space." *Gathright v. City of Portland*, 439 F.3d 573, 578 (9th Cir. 2006). If listeners disrupt a meeting in response to protected speech, the Council may address their conduct—not silence the speaker. *See, e.g.*, *Boddy v. Grech*, 178 F.4th 264, 276–77 (6th Cir. 2026) (presiding officer engaged in viewpoint discrimination by silencing speaker instead of addressing audience members who "tried to shout her down"); *see also Dowd v. City of Los Angeles*, No. CV 09-06731 DDP (SSx), 2013 WL 4039043, at *17 (C.D. Cal. Aug. 7, 2013) ("The disruption cannot be the reaction of a Councilmember who is attacked.").

Because the Word Ban discriminates based on viewpoint, it is unconstitutional—full stop. A viewpoint-suppressive purpose is "so plainly illegitimate" that it "immediately invalidate[s]" a speech restriction. *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984); *see also Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1278 (11th Cir. 2024) (noting viewpoint discrimination is "likely even invalid per se"). Thus, "[v]iewpoint discrimination doomed" a restriction against "disparaging" speech in *Matal*, and *Iancu* invalidated a restriction on "immoral or scandalous" speech "for the same reason." *Iancu*, 588 U.S. at 390, 393. This Court, too, should "remain firm on the principle that the First Amendment does not tolerate viewpoint discrimination," *id.* at 399 (Alito, J., concurring), and preliminarily enjoin the Word Ban as unconstitutional.

---

9 *See also Rosenbaum v. City & County of San Francisco*, 8 F. App'x 687, 692 n.1 (9th Cir. 2001) ("employing a 'heckler's veto'" in response to viewpoint-based complaints is viewpoint discrimination).

### B. The Word Ban fails strict scrutiny.

Even if the Word Ban's viewpoint discrimination is not unconstitutional *per se*, it cannot survive strict scrutiny. As an "egregious form of content discrimination," *Rosenberger*, 515 U.S. at 829, a viewpoint-discriminatory law is "presumptively unconstitutional" and can survive only if the government proves it is "narrowly tailored to serve compelling state interests." *Chiles*, 607 U.S. at 640 (citation omitted); *see also id.* at 655 (viewpoint discrimination is an "egregious assault" on the First Amendment (cleaned up)). A law is narrowly tailored only if it "targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1227 (9th Cir. 2019) (citation omitted). If the government can further its asserted interests by using a "plausible, less restrictive alternative," then it "must use that alternative" unless it proves—with "more than anecdote and supposition"—that "the alternative will be ineffective" and the challenged restriction is "necessary" to achieve those interests. *Id.* at 1228 (citation omitted). The Council's interests in protecting listeners from offense, dispelling "false impression[s] that the City condones" the prohibited words, and maintaining orderly meetings, Ex. B, at 1, cannot justify the Word Ban under strict scrutiny's "demanding" standard. *Chiles*, 607 U.S. at 640.

Start with offense. The First Amendment does not allow the government to "shut off discourse solely to protect others from hearing it." *Cohen*, 403 U.S. at 21. Thus, the government has no legitimate interest—much less a compelling one—in suppressing speech "merely because it may offend some people's sense of decorum." *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 969–70 (9th Cir. 2002) (citing *Cohen*, 403 U.S. at 25), *abrogated on other grounds by Winter*, 555 U.S. 7. As another court in this district previously admonished the Council, the government "cannot sacrifice political speech to a formula of civility." *Dowd*, 2013 WL 4039043, at *21 (holding Council violated First

Amendment by removing public commenters for using profanity without causing actual disruption).

Nor is the Word Ban narrowly tailored to maintaining orderly meetings. The Council already has a less restrictive means of addressing actual disruption: The Brown Act and Council Rule 12 both authorize removal of a speaker who, after a warning, actually disrupts a meeting. *See* Cal. Gov't Code § 54957.95(a), (b)(1); Ex. A, at 5. The Council can thus maintain order without categorically prohibiting protected speech.

The Word Ban's selective prohibition of two epithets further shows it is not narrowly tailored. Other epithets may offend listeners or elicit the same reactions the Council invokes to justify the Ban, yet speakers remain free to use them. That underinclusiveness "raise[s] doubts about whether the [Council] is in fact pursuing the interest[s] it invokes, rather than disfavoring a particular … viewpoint." *Victory Processing*, 937 F.3d at 1228 (citation omitted); *accord R.A.V. v. City of St. Paul*, 505 U.S. 377, 393–94 (1992) (selective prohibition of fighting words "creates the possibility that the city is seeking to handicap the expression of particular ideas").

Nor does the Council need the Word Ban to dispel mistaken impressions that it endorses a commenter's speech. It can simply disclaim endorsement. *See Prince v. Jacoby*, 303 F.3d 1074, 1094 (9th Cir. 2002). The Council routinely did so before adopting the Word Ban[10] and continues to do so today.[11] And no reasonable person would believe a member of the public's remarks *to* the Council during a public-comment period represent *the Council's* views.

---

[10] *E.g.*, LACityClerk, *supra* note 4, at 1:16:10–54.

[11] *E.g.*, LACityClerk, *Regular City Council – 8/5/26*, at 00:53:19–41 (YouTube, Aug. 5, 2026), https://www.youtube.com/watch?v=eLYlonECp7o.

### C. The Word Ban unreasonably suppresses speech in a limited public forum.

The Word Ban also violates the rules governing limited public forums because it suppresses nondisruptive speech fully consistent with the purpose of the public-comment period. "[C]ity council meetings, once open to public participation, are limited public forums," where speech restrictions must be viewpoint neutral and "reasonable in light of the purpose served by the forum." *Norse*, 629 F.3d at 975, 976 n.10 (citations omitted). Yet as explained above, the Word Ban is not viewpoint neutral. *Supra* Section I.A. Nor is it reasonable.

As the "'very purpose' of a council meeting 'is the creation of a forum for public discourse and decisionmaking,'" *Walsh*, 154 F. Supp. 3d at 1131 (quoting *White*, 900 F.2d at 1425 n.3), the First Amendment "require[s] a person actually to disturb a meeting before being ejected," *Norse*, 629 F.3d at 976. And "[a]ctual disruption means actual disruption." *Id.* The Council "cannot define disruption so as to include non-disruption." *Id.*

Another court in this district has already applied these principles to the Council's enforcement of a former meeting rule prohibiting profanity. In *Dowd*, the court explained that "actual disruption" requires "something more than the bare violation of a rule." 2013 WL 4039043, at *17. It therefore held the Council violated plaintiffs' First Amendment rights by ejecting them for violating an anti-profanity rule where there was "no actual disturbance beyond breaching the Rules by the use of profanity." *Id.* at *19; *accord Norse*, 629 F.3d at 976 (rejecting city's argument it could "define[] any violation of its decorum rules to be a 'disturbance'").

The Council has not learned its lesson. The Word Ban tries to end-run *Norse* and *Dowd* by manufacturing the disruption it purports to punish. It treats the presiding officer's "need to stop the meeting" to enforce the Ban against a previously warned speaker as the predicate "disruption." Ex. A, at 3.

But *self-imposed* disruption is not "actual disruption." *See Norse*, 629 F.3d at 976; *Dowd*, 2013 WL 4039043, at *17; *see also Fellers v. Kelley*, 189 F.4th 177, 184 (1st Cir. 2026) (rejecting disruption-based justification where "[t]here was no disruption until school officials chose to intervene").

Nor can listeners' reactions supply the missing disruption or otherwise render the Word Ban reasonable. The Council must address disruptive *attendees* rather than silence *the speaker*—listener offense cannot justify censorship. *See supra* Sections I.A–B.

The Word Ban is also unreasonable because it suppresses speech fully consistent with the purpose of public-comment periods. It applies even when a speaker stays on topic and within their allotted time, complies with every other rule, and does not interfere with the meeting's orderly conduct. Ex. A, at 3. Segarra-Bohlinger used the prohibited words as part of a critique *of the Word Ban*.[12] Nothing about using a prohibited word in those circumstances frustrates the forum's purpose. *See White*, 900 F.2d at 1425 & n.3; *Walsh*, 154 F. Supp. 3d at 1131–32.

The Word Ban is additionally unreasonable because it gives presiding officers unbridled discretion over removal. Speech restrictions must have "objective, workable standards" that render them "capable of reasoned application," *Minn. Voters All. v. Mansky*, 585 U.S. 1, 21–23 (2018), as standardless discretion permits "arbitrary application" and fosters impermissible risk of viewpoint discrimination, *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 (1992); *Kaahumanu v. Hawaii*, 682 F.3d 789, 807 (9th Cir. 2012). Although the Ban requires terminating a previously warned speaker's remarks, it provides only that the speaker is "subject to *possible* removal and exclusion," without specifying when removal is

[12] October Meeting Video, *supra* note 6, at 02:04:24–06:04; December Meeting Video, *supra* note 7, at 01:13:14–14:47.

warranted. Ex. A, at 3 (emphasis added). Presiding officers may thus impose different consequences for identical conduct, with no standard preventing that choice from turning on the speaker's identity, message, or viewpoint. And because removal automatically triggers the Meeting Ban, that arbitrary discretion governs not only whether the speaker remains at the current meeting but also whether they may attend future ones. *See* Ex. A, at 3.

The availability of "simple available alternatives" further confirms the Word Ban is unreasonable. *Sammartano*, 303 F.3d at 967. The Council can maintain order by removing speakers who actually disrupt meetings and dispel mistaken impressions that it condones offensive speech by saying it doesn't. *See supra* Section I.B. Those less restrictive alternatives address the asserted interests without censoring nondisruptive speech.

**D. The Word Ban is an unconstitutional prior restraint.**

The Word Ban is also an unconstitutional prior restraint. *See Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553, 558–59 (1975). "It is always difficult to know in advance what an individual will say," so "a free society prefers to punish the few who abuse rights of speech after they break the law" rather than "throttle them and all others beforehand." *Id.* at 559. Prior restraints thus bear a "'heavy presumption' against [their] constitutional validity," and the government carries a correspondingly "heavy burden" to justify them. *Org. for a Better Aus. v. Keefe*, 402 U.S. 415, 419 (1971) (citation omitted).

The Word Ban operates as a prior restraint in two ways. It categorically prohibits words and, after a violation, requires the presiding officer to order the speaker not to use the word again "in that or any future Council or Committee meeting." Ex. A, at 3. That warning restrains future speech before the Council knows its context, message, or effect on the meeting.

Such prior restraints cannot stand unless the speech restriction imposed independently complies with the First Amendment. *In re Nat'l Sec. Letter*, 33 F.4th 1058, 1071 (9th Cir. 2022) (citing *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969)). For reasons explained *supra* at Sections I.A–C, the Word Ban does not.

Nor can hypothetical disruption justify the Word Ban's prior restraint, which cannot rest on "surmise or conjecture that untoward consequences may result," but requires consequences comparable to "imperiling the safety of a transport already at sea." *N.Y. Times Co. v. United States*, 403 U.S. 713, 725–27 (1971) (Brennan, J., concurring); *see also id.* at 730 (Stewart, J., concurring) (prior restraint on publishing Pentagon Papers unjustified absent evidence publication would cause "direct, immediate, and irreparable damage to our Nation or its people"). The possibility that a speaker's use of a prohibited word might offend listeners or disrupt a meeting falls far short of that demanding standard.

Presiding officers' standardless removal authority, *see supra* Section I.C, heightens the danger of the Word Ban's prospective censorship. "[T]he mere existence of the [government's] unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988).

For all these reasons, the Council cannot carry its heavy burden here.

## II. Segarra-Bohlinger Is Likely to Succeed on Her Claim that the Word Ban Is Unconstitutionally Overbroad.

The Word Ban is unconstitutionally overbroad on its face for two independently sufficient reasons. First, it "lacks a 'plainly legitimate sweep.'" *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)). Second,

even if the Word Ban has some legitimate applications, its "unconstitutional applications substantially outweigh its constitutional ones." *Id.* at 723–24 (cleaned up).

None of the Word Ban's applications supplies a plainly legitimate sweep. Offensiveness cannot justify censorship. *See Cohen*, 403 U.S. at 25–26; *Sammartano*, 303 F.3d at 969–70. And when a particular use of a prohibited word independently constitutes unprotected speech or actually disrupts a meeting, existing law already authorizes regulation on those grounds. Ex. A, at 4–6 (Council Rule 12); Cal. Gov't Code § 54957.95(a); *cf. R.A.V.*, 505 U.S. at 391–92 (government may regulate unprotected speech for the reason it is unprotected, but not for a separate, constitutionally impermissible reason); *Chaker v. Crogan*, 428 F.3d 1215, 1227–28 (9th Cir. 2005) (applying *R.A.V.* to invalidate law prohibiting independently regulable false speech only when it criticized police).

Even if the Word Ban has a conceivable legitimate sweep, the Ban's unconstitutional applications substantially outnumber any possible lawful uses. *See Moody*, 603 U.S. at 723–24. The Ban reaches every use and every "variation" of the two words, regardless of context, meaning, or effect on the proceedings. Ex. A, at 3. Its potential applications are thus as broad as all potential uses of those words.[13] Yet only a handful of those uses could independently fall outside the First Amendment's protection.

---

[13] *See, e.g.*, L.A. Dep't of City Planning, *Los Angeles Historic Context Statement: African American History of Los Angeles* 16 n.16, 81 (2018), https://planning.lacity.gov/odocument/7db8747f-87fb-4c6f-bb95-5482be050683/SurveyLA_AfricanAmericanHCS_05242019.pdf (reproducing "nigger" in recounting location names and campaign ad); David Mack, *The C-Word Is Everywhere Right Now—And Not in a Bad Way*, Rolling Stone (May 15, 2023), https://www.rollingstone.com/culture/culture-features/c-word-is-everywhere-lgbt-tucker-carlson-1234735324 (discussing reclamation of "cunt"); LACityClerk, *Regular City Council – 8/6/25*, at 01:02:53–03:35 (YouTube, Aug. 6, 2025),

Neither prohibited word is inherently unprotected. *See Bartow*, 997 F.3d at 209; *Jefferson*, 51 Cal. App. 3d at 724. Thus, any constitutional applications of the Word Ban are limited to uses that independently constitute unprotected speech or actually disrupt a meeting. *See Norse*, 629 F.3d at 976. But the First Amendment recognizes only a "few and narrowly drawn" categories of unprotected expression, such as incitement, true threats, defamation, fraud, obscenity, and speech integral to criminal conduct. *Chiles*, 607 U.S. at 641. And against those limited applications stands every use of a prohibited word that is neither unprotected nor actually disruptive. Those unconstitutional applications substantially outweigh any constitutional ones, rendering the Word Ban facially invalid. *See Moody*, 603 U.S. at 724.

### III. Segarra-Bohlinger Is Likely to Succeed on Her Claim that the Meeting Ban Unreasonably Excludes Citizens from a Limited Public Forum.

The Meeting Ban violates the First Amendment by excluding citizens from future meetings based on past removals rather than actual disruption. That exclusion burdens citizens' "enormous first amendment interest[s]" in attending public meetings and addressing those who govern them. *White*, 900 F.2d at 1425; *see Walsh*, 154 F. Supp. 3d at 1118. The Council cannot justify that burden by presuming future disruption: "Actual disruption means actual disruption," *Norse*, 629 F.3d at 976, while exclusion based on a past removal necessarily rests on "possible or assumed disruption in the future." *Walsh*, 154 F. Supp. 3d at 1133.

*Walsh* facially invalidated as unreasonable an ordinance excluding people from future meetings based on past removals, holding "avoidance of future disruption" could not justify prospective exclusion based on "mere

---

https://www.youtube.com/live/fnR1sUKkocc (enforcing Word Ban against speaker quoting passage from *Brandenburg v. Ohio*, 395 U.S. 444 (1969), containing "nigger").

speculation" of "additional disruptions." 154 F. Supp. 3d at 1128–34. Even "a history of disrupting meetings and making other people in attendance feel unsafe" did not justify "prolonged and prospective exclusions from a forum intended for public discourse and debate." *Id.* at 1131. The court explained the city had a "simple alternative" for maintaining order: its "continuing ability" to remove someone who actually disrupts a meeting. *Id.* at 1131–32.

The same reasoning applies here. Council Rule 12 and the Brown Act each provide the "simple alternative" of removing someone who actually disrupts a meeting rather than excluding them from future ones. Ex. A, at 4–6; Cal. Gov't Code § 54957.95(a); *see Walsh*, 154 F. Supp. 3d at 1128, 1131–32; *see also Brown v. City of Jacksonville*, No. 3:06-CV-122-J-20MMH, 2006 WL 385085, at *4, *6 (M.D. Fla. Feb. 17, 2006) (prospective ban not narrowly tailored where officials could address future misconduct when it occurred). Preemptive removal from future meetings is simply unnecessary. *Walsh*, 154 F. Supp. 3d at 1131. The Meeting Ban is thus unreasonable and, consequently, unconstitutional.

## IV. Segarra-Bohlinger Is Likely to Succeed in Showing the Meeting Ban Imposes an Unconstitutional Prior Restraint on Attending and Participating in Public Meetings.

The Meeting Ban is a prior restraint because, once a presiding officer removes someone, it automatically prohibits that person from attending and participating in future meetings unless the Council overrules the removal by majority vote. Ex. A, at 3, 6; *see Brown*, 2006 WL 385085, at *4. It therefore conditions a removed person's future exercise of First Amendment rights on affirmative government permission and thus bears a "'heavy presumption' against its constitutional validity." *Keefe*, 402 U.S. at 419 (citations omitted). The Meeting Ban cannot overcome that presumption because, as explained

above, it is not reasonable in light of the purpose of Council meetings. *Supra* Section III; *see Nat'l Sec. Letter*, 33 F.4th at 1071; *Norse*, 629 F.3d at 975–76.

The Council also has unbridled discretion to overrule a removal because no Council Rule governs when it should do so, leaving it free to treat similarly situated attendees differently. The First Amendment does not tolerate such standardless discretion. *Cf. United States v. Stevens*, 559 U.S. 460, 480 (2010) (First Amendment "does not leave us at the mercy of *noblesse oblige*").

And the Meeting Ban lacks the procedural safeguards required "to obviate the dangers of" a prior restraint. *Se. Promotions*, 420 U.S. at 559–60. A prior restraint must, at minimum, place the burden on the government to initiate judicial proceedings and justify the restraint, "preserv[e] the status quo" pending judicial review, and assure "prompt final judicial determination." *Id.* (citing *Freedman v. Maryland*, 380 U.S. 51, 58 (1965)). The Meeting Ban does none of those things. Ex. A, at 3; *see Brown*, 2006 WL 385085, at *4–5 (invalidating immediately effective, prospective ban on attending city council meetings for lack of required procedural safeguards). A prior restraint that automatically excludes citizens from future public meetings without objective standards or meaningful procedural safeguards cannot overcome the "heavy presumption" against constitutional validity. *See Keefe*, 402 U.S. at 419.

## V. Segarra-Bohlinger Is Likely to Succeed on Her Claim that the Word Ban and Meeting Ban Violate the Brown Act.

The same features that render the Word Ban and Meeting Ban unconstitutional also put them squarely at odds with the Brown Act, which applies to the Council and its committees, Cal. Gov't Code §§ 54951, 54952(a), and guarantees public access to and participation at those bodies' meetings. "[A]ll meetings" of the Council must be "open and public," "all persons shall be permitted to attend," and the public must have an opportunity to "directly address" the Council on matters within its jurisdiction. *Id.* §§ 54953(a),

54954.3(a)(1). Local meeting rules cannot conflict with those statutory protections. *See S.D. Union v. City Council*, 146 Cal. App. 3d 947, 957–58 (1983).

Although the Brown Act permits "reasonable regulations" governing public comment, Cal. Gov't Code § 54954.3(b)(1), it expressly forbids the Council from prohibiting criticism of the City or Council, *id.* § 54954.3(c). Categorically prohibiting particular words based on their offensiveness, their use as a means of criticism, or listeners' anticipated reactions is not reasonable. *See supra* Sections I.A–C. Nor is it reasonable to deny removed persons the attendance and participation the Act guarantees at future meetings. *See supra* Section III.

Both Bans thus exceed the Brown Act's limits on removal and exclusion. The Act permits removal only if a person "engages in behavior … that actually disrupts, disturbs, impedes, or renders infeasible the orderly conduct of the meeting" and does not promptly stop after a warning. Cal. Gov't Code § 54957.95(a), (b)(1). The Word Ban dispenses with that requirement by manufacturing disruption through the presiding officer's own interruption to enforce it, while the Meeting Ban automatically extends a removal to future meetings the person has not disrupted and has a statutory right to attend. Ex. A, at 3; *see* Cal. Gov't Code § 54953(a); *supra* Sections I.C, III.

## VI. The Word Ban and Meeting Ban Irreparably Harm Segarra-Bohlinger's Speech Rights.

Segarra-Bohlinger will suffer irreparable harm absent a preliminary injunction because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese*, 592 U.S. at 19 (quoting *Elrod*, 427 U.S. at 373 (plurality opinion)). She intends to continue attending Council meetings and speaking about City officials and policies during public-comment periods—conduct at the heart of

the First Amendment. *See Rosenblatt*, 383 U.S. at 85; *White*, 900 F.2d at 1425. She wants the freedom to choose how to express her views, including using words the Word Ban prohibits when she considers them integral to her message. Compl. ¶ 104. But she remains subject to the Council's warning not to use those words at "any future Council or Committee meeting," Ex. A, at 3, and the Council continues to enforce the Word Ban.[14] She therefore must either censor her word choice or face termination of her remarks and possible removal and automatic exclusion from future meetings. Ex. A, at 3.

Either course inflicts irreparable harm: Self-censorship is a cognizable First Amendment injury, *see Garcia v. County of Alameda*, 150 F.4th 1224, 1229 (9th Cir. 2025), while enforcement suppresses protected speech and excludes Segarra-Bohlinger from future meetings. Once speech is suppressed or a meeting passes, those harms cannot be undone.

## VII. The Balance of Equities and Public Interest Favor Upholding Speech Rights.

The balance of equities and public interest strongly favor an injunction. Because the City is a governmental party, those factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The City has no legitimate interest in enforcing unlawful rules, *see Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023), and it "is always in the public interest to prevent the violation of a party's constitutional rights," *Meinecke*, 99 F.4th at 526 (citation omitted). An injunction would also vindicate the Brown Act's attendance and participation guarantees, *see supra* Section V, while preserving the Council's ability to maintain order, *see supra* Section I.B.

For the same reasons, there is "no realistic likelihood of harm" to the City from an injunction, so the Court should waive Rule 65(c)'s bond requirement. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted).

[14] *See, e.g.*, LACityClerk, *supra* note 8, at 01:09:54–13:49, 01:15:36–16:17.

## CONCLUSION

The Court should grant a preliminary injunction barring the City of Los Angeles from enforcing the Word Ban and Meeting Ban at Council and committee meetings.

DATED: October 30, 2026 Respectfully submitted,

By: /s/ Zachary T. Silver
Zachary T. Silver
D.C. Bar No. 1742271*
Gabriel Z. Walters
D.C. Bar No. 1019272*
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave., SE
Suite 340
Washington, D.C. 20003
Tel: (215) 717-3473
Fax: (215) 717-3440
Email: zach.silver@thefire.org
Email: gabe.walters@thefire.org

David Loy
Cal. Bar No. 229235
FIRST AMENDMENT COALITION
534 4th Street, Suite B
San Rafael, CA 94901-3334
Tel: (415) 460-5060
Email: dloy@firstamendmentcoalition.org

*Attorneys for Plaintiff STACEY SEGARRA-BOHLINGER*

* Admitted *pro hac vice*

# CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

The undersigned, counsel of record for Plaintiff Stacey Segarra-Bohlinger, certifies that this brief contains 6,988 words, which complies with the word limit of L.R. 11-6.1.

DATED: October 30, 2026

/s/ Zachary Silver
Zachary Silver