David Loy, Cal. Bar No. 229235
FIRST AMENDMENT COALITION
534 4th Street, Suite B
San Rafael, CA 94901
Telephone: (415) 460-5060
Email: dloy@firstamendmentcoalition.org

Zachary T. Silver, D.C. Bar No. 1742271*
Gabriel Z. Walters, D.C. Bar No. 1019272*
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, D.C. 20003
Telephone: (215) 717-3473
Email: zach.silver@fire.org
Email: gabe.walters@fire.org

*Attorneys for Plaintiff*
* Admitted *pro hac vice*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| STACEY SEGARRA-BOHLINGER,<br>Plaintiff,<br>v.<br>CITY OF LOS ANGELES, a political subdivision of the State of California,<br>Defendant. | Case No. 2:26-cv-11599-MCS-BFMx<br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br>Date: December 14, 2026<br>Time: 9:00 AM<br>Before: Judge Mark C. Scarsi |

# TABLE OF CONTENTS


TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

- I. The City Concedes the Word Ban Targets Speech Because of Its Perceived Offensiveness. That Is Unconstitutional Viewpoint Discrimination. .......... 2
- II. The City Has No Legitimate Interest in Suppressing Speech It Deems Offensive, and the Word Ban Is Not the Least Restrictive Means of Preserving Order. .......... 3
- III. The City's Defenses of the Word Ban Not Only Concede, But Embrace, an Unconstitutional Heckler's Veto. .......... 5
- IV. The City Focuses on How Few Words It Bans. But Overbreadth Turns on How Much Protected Speech It Suppresses. .......... 7
- V. Past Disruption Cannot Justify the Meeting Ban's Prospective Restraint on Attending Council Meetings. .......... 9
- VI. The City's General Rulemaking Authority Cannot Override the Brown Act's Express Protections. .......... 10

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

## Cases

*Am. Freedom Def. Initiative v. King County*,
904 F.3d 1126 (9th Cir. 2018) .......... 2

*Boddy v. Grech*,
178 F.4th 264 (6th Cir. 2026) .......... 4, 6

*Borough of Duryea v. Guarnieri*,
564 U.S. 379 (2011) .......... 4

*Burson v. Freeman*,
504 U.S. 191 (1992) .......... 4

*Chiles v. Salazar*,
607 U.S. 627 (2026) .......... 1, 3, 5, 8

*Cohen v. California*,
403 U.S. 15 (1971) .......... 3, 7

*Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*,
533 F.3d 780 (9th Cir. 2008) .......... 1, 6

*Dowd v. City of Los Angeles*,
No. CV 09-06731, 2013 WL 4039043 (C.D. Cal. Aug. 7, 2013) .......... 4, 5, 7

*Erznoznik v. City of Jacksonville*,
422 U.S. 205 (1975) .......... 7

*Fellers v. Kelley*,
189 F.4th 177 (1st Cir. 2026) .......... 7

*Free Speech Coal., Inc. v. Paxton*,
606 U.S. 461 (2025) .......... 3

*Gathright v. City of Portland*,
439 F.3d 573 (9th Cir. 2006) .......... 4

*Iancu v. Brunetti*,
588 U.S. 388 (2019) .......... 1
*Imperial Sovereign Ct. of Mont. v. Knudsen*,
170 F.4th 820 (9th Cir. 2026) .......... 7
*In re Nat'l Sec. Letter*,
33 F.4th 1058 (9th Cir. 2022) .......... 9
*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 6
*Landmark Commc'ns, Inc. v. Virginia*,
435 U.S. 829 (1978) .......... 6
*Matal v. Tam*,
582 U.S. 218 (2017) .......... 1, 2
*Meinecke v. City of Seattle*,
99 F.4th 514 (9th Cir. 2024) .......... 6
*Minn. Voters All. v. Mansky*,
585 U.S. 1 (2018) .......... 7
*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) .......... 8
*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) .......... 5, 7
*Norse v. City of Santa Cruz*,
629 F.3d 966 (9th Cir. 2010) (en banc) .......... 1, 6, 8, 9
*Nurre v. Whitehead*,
580 F.3d 1087 (9th Cir. 2009) .......... 2
*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992) .......... 2, 3
*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995) .......... 2

*Rosenblatt v. Baer*,
383 U.S. 75 (1966) .......... 5
*S.D. Union v. City Council*,
146 Cal. App. 3d 947 (1983) .......... 10
*Snyder v. Phelps*,
562 U.S. 443 (2011) .......... 1
*Terminiello v. City of Chicago*,
337 U.S. 1 (1949) .......... 5
*Victory Processing, LLC v. Fox*,
937 F.3d 1218 (9th Cir. 2019) .......... 3
*Walsh v. Enge*,
154 F. Supp. 3d 1113 (D. Or. 2015) .......... 9
*White v. City of Norwalk*,
900 F.2d 1421 (9th Cir. 1990) .......... 5

**Statutes**

Cal. Gov’t Code § 54953 .......... 10
Cal. Gov't Code § 54954.3 .......... 10
Cal. Gov’t Code § 54957.95 .......... 4, 8, 9, 10

## INTRODUCTION

The First Amendment forecloses the City's position that it may ban certain words from City Council meetings because of offended onlookers. "Giving offense is a viewpoint," *Matal v. Tam*, 582 U.S. 218, 243 (2017) (plurality opinion), and the government may not regulate speech based on viewpoint, including because it offends. *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019); *see also Snyder v. Phelps*, 562 U.S. 443, 448 (2011) (First Amendment protects holding "God Hates Fags" signs outside military funeral). "It is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 787–88 (9th Cir. 2008) (cleaned up).

Yet the City responds as though this binding precedent, and these core principles of American free speech, do not exist. It insists that if speech sufficiently displeases, discourages, or disgruntles attendees, the Council may censor it. And for the City, the more offensive a message—and the more vehemently listeners object—the greater the government's power to suppress it. That has a name: a "heckler's veto." And it has no place in our constitutional tradition. *Id.*

The Ninth Circuit made clear that for a city council to eject a speaker, the speaker must "actual[ly] disrupt[]" a meeting, and cities cannot "define 'disturbance' in any way they choose." *Norse v. City of Santa Cruz*, 629 F.3d 966, 976 (9th Cir. 2010) (en banc). The City cannot evade *Norse* by recasting listeners' offense or supposed reluctance to attend as "disruption." That is simply a heckler's veto smuggled into the Council chamber inside the Trojan horse of "maintaining order." *Id.* But the First Amendment "is no word game," and "the rights it protects cannot be renamed away or their protections nullified by 'mere labels.'" *Chiles v. Salazar*, 607 U.S. 627, 645 (2026) (citation omitted).

Because the City offers no basis for departing from these bedrock First Amendment principles, the Court should grant the preliminary injunction.

## ARGUMENT

### I. The City Concedes the Word Ban Targets Speech Because of Its Perceived Offensiveness. That Is Unconstitutional Viewpoint Discrimination.

This is a straightforward case of viewpoint discrimination, the most "egregious form of content discrimination," *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995), which is "impermissible no matter the forum," *Nurre v. Whitehead*, 580 F.3d 1087, 1095 n.6 (9th Cir. 2009). *Matal* is clear: The First Amendment bars the government from suppressing speech because of its perceived offensiveness. 582 U.S. at 223 (majority opinion). *Matal* is dispositive, yet the City never cites it.

In *Matal*, the government defended a prohibition on "disparag[ing]" trademarks as viewpoint neutral because it applied equally to all groups. *Id.* at 243 (plurality opinion). The plurality rejected that reasoning because "[g]iving offense is a viewpoint." *Id.* Here, the City likewise insists its "blanket ban" is viewpoint neutral because it applies equally to "proponents of all views." Opp'n Mot. Prelim. Inj. ("Opp'n") 5. But that is precisely the distinction *Matal* forecloses. 582 U.S. at 243 (plurality opinion); *accord Am. Freedom Def. Initiative v. King County*, 904 F.3d 1126, 1131–32 (9th Cir. 2018) (disparagement prohibition remained viewpoint discriminatory even when applied equally to all speakers, because "giving offense is a viewpoint").

The City's reliance on *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391 (1992), is inapt. Far from upholding a "blanket ban" on "'odious racial epithets' by 'proponents of all views,'" Opp'n 5, the Court used that observation about the ordinance's "practical application" to explain why seemingly evenhanded

restrictions nevertheless *can* be viewpoint discriminatory when they punish particular types of "abusive" attacks. 505 U.S. at 391–92.

The City's suggestion that speakers can convey their viewpoints using "other" words, Opp'n 11, is untenable. The First Amendment protects speakers' choice of expression, not merely their ability to convey it in government-approved words. *See Chiles*, 607 U.S. at 640. The City concedes its proposed substitutes—"Black" and "nasty woman"—lack "the emotive force of the prohibited words." Opp'n 11.

The City argues that while it "certainly" considers the words offensive, those concerns did not animate the Word Ban. Opp'n 5. The City's describing the words as "toxifying," "intolerable," "objectionable," and "especially odious"—all synonyms for "offensive"—belies that disclaimer. Opp'n 1, 6–7, 9–11. Besides, the Council's findings show its primary concern *was* offense: It adopted the Ban because it considers the words "offensive," "injurious," and "inherently harmful." Mot. Prelim. Inj. ("Mot.") Ex. B, at 1.

## II. The City Has No Legitimate Interest in Suppressing Speech It Deems Offensive, and the Word Ban Is Not the Least Restrictive Means of Preserving Order.

Even if not unconstitutional *per se*, the Word Ban fails strict scrutiny, "the most demanding test known to constitutional law," *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 484 (2025) (citation omitted), because the City fails to identify a legitimate interest—much less a compelling one—in suppressing speech it deems offensive. *See Cohen v. California*, 403 U.S. 15, 25 (1971). Nor is the Word Ban the least restrictive means to achieve the asserted interest in maintaining orderly meetings. *See Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1228 (9th Cir. 2019).

The Council has no legitimate interest in suppressing speech it deems offensive. "First Amendment jurisprudence is clear that the way to oppose

offensive speech is by more speech, not censorship, enforced silence or eviction from legitimately occupied public space." *Gathright v. City of Portland*, 439 F.3d 573, 578 (9th Cir. 2006). And banning offensive words is not the least restrictive means of advancing the Council's interest in maintaining order: The Brown Act and Council Rule 12 *already* authorize removal of a previously warned speaker who actually disrupts a meeting. *See* Cal. Gov't Code § 54957.95(a); Mot. Ex. A, at 5. The First Amendment requires the Council to maintain order without prohibiting protected expression. *See Boddy v. Grech*, 178 F.4th 264, 276–77 (6th Cir. 2026); *Dowd v. City of Los Angeles*, No. CV 09-06731, 2013 WL 4039043, at *17, *19 (C.D. Cal. Aug. 7, 2013).

The Word Ban also flunks strict scrutiny's narrow-tailoring requirement as overinclusive because it restricts nondisruptive speech. Take Segarra-Bohlinger's use of "cunt" during public comment to criticize the Council and the Ban. In both instances, she addressed issues within the Council's jurisdiction, did not exceed her allotted time, violated no other meeting rule, and caused no disruption. Yet the Council enforced the Ban against her both times. Verified Compl. ¶¶ 8, 69–87.

The City puzzlingly attempts to analogize to *Burson v. Freeman*, Opp'n 7–9, which upheld a state law prohibiting electioneering within 100 feet of polling places' entrances, 504 U.S. 191, 211 (1992). Under *Burson*'s unique facts, the Court confronted what it viewed as a "conflict" between free speech and the right to vote. *Id.* The City misappropriates this conflicting-rights dichotomy, asserting "the right to free speech and the right to petition the government" are "competing constitutional rights," *i.e.*, suppressing offensive speech at Council meetings is necessary to safeguard the right to petition. Opp'n 2, 7–10. That is absurd. They are "cognate rights" that "share substantial common ground." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388–89 (2011). Infringing one necessarily infringes the other. The Word Ban does just

that, undermining *both* the rights to free speech *and* to petition; impeding citizens' "enormous first amendment interest in directing speech about public issues to those who govern their city," *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990), *and* violating their "inalienable right" to decide "how best to speak," *Chiles*, 607 U.S. at 640 (citation omitted).

Because speech criticizing the government lies "at the very center of the constitutionally protected area of free discussion," *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966), city council meetings are precisely where public officials must uphold our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). That councilmembers may sometimes face "vehement, caustic, and sometimes unpleasantly sharp attacks," *id.*, is a feature of our constitutional system, not a bug. *See Dowd*, 2013 WL 4039043, at *21 ("It is asking much of City Council members … to tolerate profanities and personal attacks, but that is what is required by the First Amendment."); *see also Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949) ("A function of free speech … is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger."). The City's contention that "the First Amendment should ever so slightly give way" here, Opp'n 7, turns our Constitution upside-down.

## III. The City's Defenses of the Word Ban Not Only Concede, But Embrace, an Unconstitutional Heckler's Veto.

Each justification the City supplies for its censorship boils down to an unconstitutional heckler's veto, untenable everywhere, but especially in city council meetings. Citizens have an "enormous first amendment interest in directing speech about public issues to those who govern their city." *White*, 900 F.2d at 1425. Rules governing public-comment periods therefore must,

first and foremost, be viewpoint neutral, *Norse*, 629 F.3d at 975, which the Word Ban fails in spades. *Supra* Section I. The Court therefore need not reach whether the Ban is "reasonable" in light of Council meetings' purpose. *See Norse*, 629 F.3d at 975. But even if it did, restricting the words the public may use to discuss issues in a forum designed for that discussion is not reasonable.

The Ninth Circuit squarely held "actual disruption" is required before removing a speaker. *Id.* at 976. The City responds as though audience discomfort and anger at others' remarks can justify censoring offending speakers. It cannot. Suppressing speech because listeners object is the "prototypical heckler's veto." *Meinecke v. City of Seattle*, 99 F.4th 514, 522–25 (9th Cir. 2024); *accord Ctr. for Bio-Ethical Reform*, 533 F.3d at 787 n.4; *see Boddy*, 178 F.4th at 276–77. The Council may address disruptive listeners, but it cannot silence speakers to prevent hostile reactions.

The City's argument that it can prohibit words because they discourage public participation is just a heckler's veto in disguise. Whether relying on listeners reacting to disagreeable speech by disrupting a meeting, leaving a meeting, or declining to attend, the constitutional infirmity is the same: The City is impermissibly using listeners' adverse reactions to justify silencing protected speech. The City cannot override the First Amendment by pointing to the Council's "findings."[1] Opp'n 6–7. "Deference to a legislative finding cannot limit judicial inquiry when First Amendment rights are at stake." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 843 (1978).

This is not this Council's first attempt to police words at public meetings. In 2013, former Judge Pregerson held the Council violated the First Amendment by ejecting speakers for "bare violation[s]" of an anti-profanity

---

[1] Judicial notice of the City's public records, *see* Fauble Decl. ¶ 8, does not establish the truth of factual assertions in those records. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

rule without "actual disturbance beyond breaching the Rules by the use of profanity." *Dowd*, 2013 WL 4039043, at *17, *19. The Word Ban repeats that error: It requires the presiding officer to stop the meeting when a warned speaker repeats a prohibited word, then declares the officer's "need to stop the meeting" has "actually disrupted" the meeting. Mot. Ex. A, at 3. The Council cannot manufacture disruption through its own interruption of protected speech. Mot. 14–15; *see Fellers v. Kelley*, 189 F.4th 177, 184 (1st Cir. 2026).

Absent substantial privacy interests or hearers' exceptional inability to avoid speech, the government cannot suppress it merely to spare offense. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209–10 (1975); *see Imperial Sovereign Ct. of Mont. v. Knudsen*, 170 F.4th 820, 864–65 (9th Cir. 2026). No such privacy or captive-audience interests exist in city council meetings or other public government proceedings. That is why, in *Cohen v. California*, the Supreme Court held the First Amendment protected wearing a "Fuck the Draft" jacket at the Los Angeles Hall of Justice. 403 U.S. at 16, 22–26. The City waves away that case's striking similarity to this one by asserting *Cohen* involved criminal punishment. True, but irrelevant. Whether the First Amendment protects speech does not turn on the consequences the government imposes. *Sullivan*, 376 U.S. at 265. Neither *Norse* nor *Dowd* involved criminal punishment.

Finally, the City ignores Plaintiff's argument that the Word Ban violates *Minnesota Voters Alliance v. Mansky*, 585 U.S. 1, 21–23 (2018), by authorizing removal and prospective exclusion without standards governing whether to impose those sanctions. Mot. 15–16. That failure to respond speaks for itself.

## IV. The City Focuses on How Few Words It Bans. But Overbreadth Turns on How Much Protected Speech It Suppresses.

The City assumes it can avoid overbreadth by banning only a few words, Opp'n 10–11, but that is not how overbreadth works. Overbreadth assesses a

restriction's constitutional applications ("legitimate sweep") against its unconstitutional ones—not how much worse the law could have been. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723–24 (2024). The Word Ban flunks that test.[2]

The City identifies no legitimate sweep for the Word Ban. As shown, offensiveness cannot justify censorship, and Council Rule 12 and the Brown Act already authorize intervention against actual disruption. *See* Mot. Ex. A, at 4–6; Cal. Gov't Code § 54957.95(a); *see also* Mot. 17–18. The Word Ban instead independently prohibits only protected, nondisruptive speech. The City does not rebut that point. Opp'n 10–11.

Even assuming legitimate applications (which the City fails to supply), the Ban's unconstitutional applications substantially outweigh them. *See Moody*, 603 U.S. at 723–24. Speech at public meetings, including offensive speech, is constitutionally protected unless it falls within one of a "few and narrowly drawn" categories of unprotected speech, *Chiles*, 607 U.S. at 641, or actually disrupts a meeting, *Norse*, 629 F.3d at 976. Yet the Ban extends far beyond those potentially legitimate applications, prohibiting *every* use of two words and their "variations." Mot. Ex. A, at 2. It proscribes quotation, parody, and all other expressive uses—including criticizing the Ban itself, as Segarra-Bohlinger illustrated. Arguing that "[t]he restriction and the sweep are concomitant," Opp'n 10, overlooks this fundamental distinction between the Ban's broad scope and whatever narrow legitimate sweep might be claimed.

---

[2] Further, any insistence that the Ban is "perfectly tailored since it prohibits exactly the two words ... that are the source of the difficulty," Opp'n 10, is not only irrelevant to overbreadth, but also rings hollow given that Council President Harris-Dawson publicly described the Ban as "baby steps" toward broader restrictions and invited a legal challenge to revisit *Dowd* to allow that. Mot. Exs. E, F; Compl. ¶¶ 48–54.

### V. Past Disruption Cannot Justify the Meeting Ban's Prospective Restraint on Attending Council Meetings.

The City's assumption that lawful removal justifies future exclusion, Opp'n 16–17, is constitutionally unfounded. Even past actual disruption cannot justify exclusions based on "possible or assumed disruption in the future." *Walsh v. Enge*, 154 F. Supp. 3d 1113, 1131–33 (D. Or. 2015). "Actual disruption means actual disruption," *Norse*, 629 F.3d at 976, and the Council cannot presume that someone who disrupted one meeting will disrupt another. The Meeting Ban thus operates as a prior restraint.

The City defends that as an effort to "prevent disruptions" with increased penalties because lesser ones seemed too "slight" to some. Opp'n 17–18. But the Meeting Ban automatically excludes speakers from future meetings even when their initial removal resulted solely from the Council's manufactured disruption under the Word Ban. Mot. Ex. A, at 3. And courts have been clear that even when a speaker actually disrupts a meeting, that past disruption does not justify excluding her from subsequent meetings she has not disrupted. *See Walsh*, 154 F. Supp. 3d at 1131–33. The Council retains the "simple alternative" of removing anyone who actually disrupts a subsequent meeting. *Id.* at 1131–32; Mot. Ex. A, at 4–6; Cal. Gov't Code § 54957.95(a).

The City also fails to answer the separate prior restraint that lies in the Meeting Ban automatically barring removed speakers from future meetings unless the Council overrules the removal. Mot. Ex. A, at 3, 6. There are no standards governing that decision, and the Meeting Ban thus lacks required procedural safeguards. Mot. 20–21. The City addresses neither defect, Opp'n 16–17, even though burdening future First Amendment activity must *independently* satisfy constitutional requirements. *In re Nat'l Sec. Letter*, 33 F.4th 1058, 1071 (9th Cir. 2022).

## VI. The City's General Rulemaking Authority Cannot Override the Brown Act's Express Protections.

The Brown Act's authorization of "reasonable regulations" cannot justify violating the Act's express protections. Opp'n 17–18. The Act guarantees that "all persons shall be permitted to attend" meetings and may "directly address" the Council. Cal. Gov't Code §§ 54953(a), 54954.3(a)(1). It also prohibits restrictions on government criticism. *Id.* § 54954.3(c). Local rulemaking authority does not include censorship or exclusion from undisturbed future meetings.

Nor does the City reconcile the Word Ban with the Act's requirement that removal rest on behavior that "actually disrupts, disturbs, impedes, or renders infeasible the orderly conduct of the meeting." *Id.* § 54957.95(a). The Word Ban instead treats the presiding officer's interruption as disruption, regardless of actual interference. Mot. Ex. A, at 3. The Meeting Ban extends removals to future meetings despite the Act's attendance guarantee. Local rulemaking authority cannot override those protections. *S.D. Union v. City Council*, 146 Cal. App. 3d 947, 957–58 (1983).

## CONCLUSION

The Court should grant Plaintiff's motion and preliminarily enjoin both Bans.[3]

---

[3] The City offers no independent argument against the remaining preliminary injunction factors and does not contest waiving the bond requirement. Opp'n 18; *see* Mot. 22–24.

DATED: November 23, 2026

Respectfully submitted,

By: /s/ Zachary T. Silver

Zachary T. Silver
D.C. Bar No. 1742271*
Gabriel Z. Walters
D.C. Bar No. 1019272*
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave., SE
Suite 340
Washington, D.C. 20003
Tel: (215) 717-3473
Fax: (215) 717-3440
Email: zach.silver@thefire.org
Email: gabe.walters@thefire.org

David Loy
Cal. Bar No. 229235
FIRST AMENDMENT COALITION
534 4th Street, Suite B
San Rafael, CA 94901-3334
Tel: (415) 460-5060
Email: dloy@firstamendmentcoalition.org

*Attorneys for Plaintiff STACEY SEGARRA-BOHLINGER*

* Admitted *pro hac vice*

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

The undersigned, counsel of record for Plaintiff Stacey Segarra-Bohlinger, certifies that this brief contains 3,000 words, which complies with the word limit of the Court's Standing Order (Dkt. No. 18).

DATED: November 23, 2026 /s/ Zachary Silver
Zachary Silver